IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIANE SALAZAR, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1904 |
| | § | |
| STATE FARM LLOYDS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION GRANTING THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE 15% ENDORSEMENT**

This is an insurance coverage dispute. The plaintiffs, Diane Salazar and Jesse Salazar, obtained a homeowners' insurance policy (the "Policy") from State Farm Lloyds. The Salazars allege that State Farm breached the Policy and extracontractual duties by denying their claim for losses for damage to the interior of the home caused by water leaking from plumbing pipes under the home. The Salazars allege that the damage was caused by foundation movement resulting from the water leaks. State Farm Lloyds denied coverage for the collateral losses from the foundation movement.

The parties have filed cross-motions for partial summary judgment. The issue is the relationship of two endorsements: the Dwelling Foundation Endorsement (DFE) and the Water Damage Endorsement (WDE). The DFE limits coverage for foundation and related damage to 15% of the Policy's Coverage A – Dwelling limit. The Salazars' Dwelling limit is $229,100. State Farm asks this court to grant partial summary judgment that any recovery is limited to 15% of that amount, or $34,365.00. In their cross-motion and response, the Salazars contend that the WDE provides

coverage for losses due to foundation movement caused by plumbing leaks. They assert that the WDE provides broader coverage than the DFE and therefore controls. Alternatively, they assert that the endorsements are conflicting, producing ambiguity that must be construed in their favor.

Based on the parties' cross-motions and submissions, the record, and the applicable law, this court concludes that the Policy is not ambiguous and that the WDE excludes coverage for loss which consists of, or is caused by, foundation movement," even when the movement is related to plumbing leaks. As a result, the DFE applies to limit any recovery to 15% of the Coverage A Dwelling limit. State Farm's motion for partial summary judgment is granted and the Salazars' is denied.

The remaining issue, whether the DFE covers the losses the Salazars claim, is the subject of pending summary judgment motions and will be separately addressed.

The reasons for the ruling are explained below.

**I.    The Policy Terms**

The Salazars' Policy provides in part as follows:

> **SECTION I - LOSSES INSURED**
>
> **COVERAGE A –** DWELLING
>
> > We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I LOSSES NOT INSURED.

Section I - Losses Not Insured, further provides:

> **SECTION I - LOSSES NOT INSURED**
> 1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage,

>arises from natural or external forces, or occurs as a result of any combination of these:
>\* \* \*
>l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings; . . . .

(Docket Entry No. 24-1, SF/Salazar Policy, at 0032, 0034-35).

The DFE amended the Policy, as follows:

>**Dwelling Foundation Coverage.** We cover loss caused by and consisting of settling, cracking, shrinking, bulging, or expansion of the foundation, floor slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.
>
>This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred.
>
>We do not cover loss to the system from which the water or steam escaped.
>
>**Limit of Liability**. Our limit of liability for this coverage will not exceed an amount equal to 15% of the COVERAGE A – DWELLING limit applicable on the date of loss.

(*Id*. at 0017).

The WDE also amended the Policy, stating as follows:

>**Water Damage Coverage.** 1. We cover the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam from a:
>
>a. Heating, air conditioning or automatic fire protective sprinkler system;

3

>> b. Household appliance; or
>
>> c. Plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.
>
> This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system or appliance from which seepage or leakage occurred.

(*Id*. at 0018).

State Farm Lloyds agrees that the DFE provides limited coverage for foundation damage that would otherwise be excluded. State Farm Lloyds contends that the DFE covers foundation movement and related damage caused by a plumbing leak, but that any recovery is subject to the 15% cap. The Salazars contend where, as here, plumbing leaks under the home—combined with severe drought conditions—caused foundation movement that in turn caused damage to interior walls and other parts of their home, the WDE controls. The Salazars contend that the WDE provides coverage not limited to 15% of the Coverage A – Dwelling limits.

## II.     The Applicable Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (internal quotation marks and alteration omitted).

**B.     Insurance Policy Interpretation**

Under Texas law, insurance policies are interpreted under the rules of construction that apply to contracts generally. *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). Ambiguities in insurance contracts are to be strictly construed against the insurer. *Id.* at 1260-61; *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). However, this rule applies only if the contract is determined to be ambiguous. *Sharp*, 115 F.3d at 1261. Whether the contract is ambiguous is a question of law for the court to decide. *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520 (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). The fact that the parties disagree as to coverage does not create an ambiguity, nor may extrinsic evidence be admitted for the purpose of creating an ambiguity. *Id.* As in all contracts, the court looks first to the language of the contract itself, and "[w]hen there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Sharp*, 115 F.3d at 1261 (citing *Puckett*, 678 S.W.2d at 938).

**III.    Analysis**

The parties agree that the DFE limits the amount payable under the Policy to $34,365. The Salazars argue that under the WDE, State Farm Lloyds is also contractually obligated to cover collateral loss or damage that occurs as the result of any foundation movement due in whole or in part to plumbing leaks. The Salazars testified that the only damage to their home was not caused by the plumbing leak itself, but only by the foundation movement that they allege was partly due to the plumbing leak. (Docket Entry No. 32, at 5).

The Policy excludes coverage for "settling, cracking, shrinking, bulging or expansion of

pavements, patios, walls, floors, roofs, or ceilings." (Docket Entry No. 24-1, at 0034-0035). The DFE provides limited coverage for "loss caused by and consisting of" foundation movement, including damage caused by foundation movement due to a plumbing leak, but limited to 15% of Coverage A. (*Id*. at 0017).

The unendorsed Policy also excludes loss caused by or consisting of continuous or repeated water leaks. (*Id*. at 0034). The WDE provides coverage for "deterioration, wet rot or dry rot" of the structure and contents caused by continuous or repeated seepage or leakage of water from, among other things, a plumbing system. (*Id*. at 0018-19).

The WDE does not provide the broad coverage the Salazars seek for collateral damage due to foundation movement caused by plumbing leaks. The WDE excludes coverage for loss caused by foundation movement. That type of loss is present here. The WDE covers loss from deterioration, wet rot, or dry rot caused by continuous or repeated water leaks from sources that include a plumbing system. That type of loss is not present here. (*Id*. at 0018–19). The DFE, not the WDE, applies. The DFE explicitly and unambiguously limits liability for foundation damage to an amount not exceeding "15% of the Coverage A – Dwelling limit of liability at the time of loss." (*Id*. at 0017).

The Policy language is clear and unambiguous and must be applied as written. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991); *see also Puckett,* 678 S.W.2d at 938. The contract at issue, and the result reached, is consistent with *Walker v. Nationwide Prop. & Cas. Ins. Co.*, 1:12-cv-1124-JRN, 2014 WL 171246 (W.D. Tex. Jan. 6, 2014) (reconciling the DFE and WDE endorsements to hold that the insurer's liability for foundation damage is limited to 15% of Coverage A).

State Farm Lloyds's motion for partial summary judgment (Docket Entry No. 24), is granted, and the Salazars' cross-motion for partial summary judgment, (Docket Entry No. 29), is denied. The maximum amount the Salazars may recover under their claim is $34,365, less the deductible, or 15% of the Policy's Coverage A– Dwelling limit benefits.

     SIGNED on June 24, 2014, at Houston, Texas.

                                      Lee H. Rosenthal
                                  United States District Judge